IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ELLEN EWING<br><br>Plaintiff,<br><br>v.<br><br>THE CITY OF PHILADELPHIA, et al.,<br><br>Defendants. | CIVIL ACTION<br>NO. 20-3170 |

**OPINION**

Slomsky, J.                                                                                                           April 21, 2021

TABLE OF CONTENTS

I.     INTRODUCTION ............................................................................................................. 1

II.    BACKGROUND ............................................................................................................... 2

III.   STANDARD OF REVIEW ............................................................................................... 6

IV.    ANALYSIS ........................................................................................................................ 7

   A.   The Claim Against Philadelphia Parks and Recreation Department in
        Count IV Will Be Dismissed ....................................................................................... 8

   B.   The Claim Against the City of Philadelphia in Count IV Will Be Dismissed ............ 9

      1.   The Analytical Framework of 42 U.S.C. § 1983 and
           Monell v. Department of Social Services .............................................................. 10

      2.   The Amended Complaint Does Not Sufficiently Allege a Municipal Policy,
           Custom, or Deliberate Indifference ........................................................................ 11

         i.   The Claim of a Policy or Custom by the City of Philadelphia ........................... 11

         ii.  The Claim of Deliberate Indifference by City of Philadelphia .......................... 13

   C.   The Claim Against Individual Defendants Kathryn Ott Lovell and Marissa Washington
        in Count IV Will Be Dismissed ................................................................................. 14

    D.    Plaintiff Will Be Granted Leave to Amend the Amended Complaint and to File a Second Amended Complaint ............................................................................................. 16

V.    CONCLUSION ............................................................................................................. 17

**I.     INTRODUCTION**

This action arises out of allegations by Plaintiff Ellen Ewing, a former lifeguard hired by Defendant City of Philadelphia, that Defendant Michael Daniels falsely imprisoned, assaulted, and battered her.  (See Doc. No. 6 at 10-12.)  Daniels is a former City of Philadelphia lifeguard with a history of committing numerous acts of wrongdoing including, criminal mischief, unauthorized use of automobiles, robbery, extortion, theft, impersonating a public servant, harassment, making terroristic threats, and indecent exposure.  (See Doc. No. 8 at 4.)  He awaits trial on five criminal charges stemming from alleged attacks on Plaintiff.  (See Doc. No. 6 ¶¶ 56-57.)

In addition to asserting claims against Daniels as described in the Amended Complaint, Plaintiff alleges that the City of Philadelphia, the Philadelphia Parks and Recreation Department, Kathryn Ott Lovell, and Marissa Washington, who are the Commissioner and Deputy Commissioner of the Philadelphia Parks and Recreation Department, violated her civil rights under 42 U.S.C. § 1983.  (See Doc. No. 6 ¶¶ 85, 87.)  The violations arose because the City, the Department, Ott Lovell, and Washington implemented "various policies/customs allowing individuals with criminal histories," such as Daniels, "to work at Philadelphia public pools."  (Id. at 4; see also Doc. No. 6 ¶¶ 97-106.)  According to Plaintiff, the alleged customs and policies "caused the deprivation of [her] constitutional rights by placing Defendant Michael Daniels in a position where it was foreseeable that he would assault . . . Plaintiff."  (Doc. No. 6 ¶ 121.)

On November 2, 2020, the City of Philadelphia, the Philadelphia Parks and Recreation Department, Ott Lovell, and Washington filed a Motion to Dismiss the Amended Complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.  (See Doc. No. 8.)  In the Motion, they argue that Plaintiff does not allege enough facts to show a violation of her constitutional rights.  (See id. at 6-7.)  Further, they submit that Plaintiff

1

fails to "offer . . . factual support for her assertion that [the alleged] policies or customs existed . . ." or that Defendants were deliberately indifferent. (Id. at 8.) On November 17, 2020, Plaintiff filed a Response in Opposition to the Motion. (See Doc. No. 10.) For reasons set forth below, the Motion to Dismiss will be granted, but Plaintiff will be afforded the opportunity to file another Amended Complaint but should name it a "Second Amended Complaint."

**II.   BACKGROUND**

In 2000, Defendant Michael Daniels was hired by the City of Philadelphia's Parks and Recreation Department and Fairmount Park Conservancy as a seasonal lifeguard at the John B. Kelly Pool (the "Pool"), which is "supported by" the City of Philadelphia. (Doc. No. 6 ¶ 42; see also id. ¶¶ 2, 18.) Over the next fifteen years, Daniels pled guilty to committing numerous crimes, including criminal mischief and unauthorized use of automobiles and other vehicles in 2001; robbery in 2005; extortion, theft, impersonating a public servant, harassment, and making terroristic threats in 2009; and indecent exposure in 2015. (See id. ¶¶ 22-30.)

In the spring of 2018, Daniels was promoted to a supervisory position at the Pool. (See id. ¶ 19.) In this role, Daniels "supervised several lifeguards, some of which were under the age of eighteen . . . ." (Id. ¶ 21.) In the summer of 2018, Plaintiff Ellen Ewing, a minor, was hired by the City of Philadelphia and Fairmount Park Conservancy to work as a lifeguard at the Pool. (See id. ¶ 20-21.) In her role, Plaintiff directly reported to Daniels. (See id. ¶ 51.) Between July 16, 2018 and August 10, 2018, during her employment, Plaintiff claims that Daniels performed the following illegal acts without her consent:

  a. lured . . . Plaintiff into the break room at the [P]ool;

  b. cornered . . . Plaintiff in the break room;

  c. closed the door to the break room and would not let Plaintiff leave;

      d. kept Plaintiff in the break room against her consent;

      e. willfully restrained the minor Plaintiff;

      f. intended to confine . . . Plaintiff and did confine . . . Plaintiff;

      g. held . . . Plaintiff against her will; and

      h. repeatedly sexually assaulted the minor Plaintiff.

(Id. ¶ 52; see also id. ¶ 53.) As a result of these alleged actions, Daniels was arrested and charged with the following crimes: (1) unlawful contact with a minor; (2) corruption of minors; (3) indecent assault; (4) unlawful restraint of a minor where offender is not the victim's parent; and (5) endangering welfare of children. (See id. ¶ 56.) He awaits trial on these charges. (See id. ¶ 57.)

On June 29, 2020, Plaintiff initiated this federal case by filing a Complaint (Doc. No. 1) against the following six Defendants: (1) The City of Philadelphia, (2) Philadelphia Parks and Recreation Department, (3) the Fairmount Park Conservancy,[1] (4) Philadelphia Parks and Recreation Commissioner Kathryn Ott Lovell, (5) Philadelphia Parks and Recreation Deputy Commissioner of Administration Marissa Washington, and (6) Michael Daniels. (See Doc. No. 6 at 1.) After Fairmount Park Conservancy, the City of Philadelphia, Ott Lovell, and Washington filed their initial Motions to Dismiss (Doc. Nos. 4-5), Plaintiff filed the Amended Complaint (Doc. No. 6), which is currently the operative pleading.

In the Amended Complaint, Plaintiff asserts the following four claims:

Count I: False Imprisonment against Defendant Michael Daniels[;] . . .

Count II: Assault against Defendant Michael Daniels[;] . . .

---

[1] The Fairmount Park Conservancy settled with Plaintiff. (See Doc. No. 14.) In the Amended Complaint, Plaintiff states that the "Fairmount Park Conservancy [is] an organization with the goal of restoring and maintaining Philadelphia Parks," including the Pool. (Doc. No. 6 ¶¶ 40, 42.)

>Count III: Battery against Defendant Michael Daniels[; and] . . .

>Count IV: Violation of Civil Rights under 42 U.S.C. § 1983 against Defendants City, Philadelphia Parks and Recreation [Department], [the] Fairmount Park Conservancy, Kathryn Ott Lovell, and Marissa Washington.

(Id. at 10-18.)  In addition, Plaintiff alleges that Defendant Ott Lovell, in her role as Commissioner of the Philadelphia Parks and Recreation Department, oversaw Daniels' employment, and that Defendant Washington, in her role as Deputy Commissioner of Administration, performed Human Resource functions for employees such as Daniels.[2]  (See id. ¶¶ 88, 93.)  Plaintiff also makes the following accusations against the City of Philadelphia, Ott Lovell, Washington, the Philadelphia Parks and Recreation Department, and the Fairmount Park Conservancy:

>Defendants . . . created a policy that allowed criminal offenders to be placed in roles such as supervisor as Defendant Michael Daniels was[;] . . . had a policy that did not check the criminal history of those seeking jobs at the . . . Pool[;] . . . had a policy that allowed employees who committed sex offenses to remain in their positions despite their dangerous criminal records[;] . . . had a policy of not performing thorough background checks on employees even those, such as Defendant Michael Daniels, who served in supervisory roles[;] . . . had a policy of ignoring information from background checks that employees or potential employees were a danger to patrons of the . . . Pool or to the employees that they were to supervise[;] . . . had a custom or policy to allow criminal offenders to be placed in roles such as supervisor as Defendant Michael Daniels was[;] . . . had a custom or policy that they did not check the criminal history of those seeking jobs at the John B. Kelly Pool[;] . . . had a custom or policy that allowed employees who committed sex offenses to remain in their positions despite their dangerous criminal records[;] . . . had a custom of not performing thorough background checks on employees even those, such as Defendant Michael Daniels, who served in supervisory roles[;] . . . had a custom of ignoring information from background checks that employees or potential employees were a danger to patrons of the John B. Kelly Pool or to the employees whom they were to supervise[;]   . . . either performed a background check upon Defendant Michael Daniels and ignored the

---

[2]  In the Amended Complaint, Plaintiff alleges that as Commissioner of Philadelphia Parks and Recreation, Defendant Ott Lovell "oversaw approximately 700 full-time employees as well as more than 2,700 part-time and seasonal employees," including Defendant Daniels.  (Doc. No. 6 ¶ 87; see also id. ¶ 89.)  Additionally, Plaintiff claims that as Deputy Commissioner of Administration of Philadelphia Parks and Recreation, Defendant Washington "oversees several departmental units including human resources . . . [and] performed the Human Resources function for employees such as Defendant . . . Daniels."  (Id. ¶¶ 91, 93.)

4

>   results or failed to perform a background check[;] . . . either performed additional background checks upon Defendant Michael Daniels when he was rehired every year as a seasonal employee and ignored the results or failed to perform these background checks[;] . . . [and] either performed additional background checks upon Defendant Michael Daniels when he was promoted to a supervisory position and ignored the results or failed to perform these background checks.

(Id. ¶¶ 97-106, 108, 110-11.)

On November 2, 2020, the City, the Philadelphia Parks and Recreation Department, Ott Lovell, and Washington filed a Second Motion to Dismiss Count IV for Failure to State a Claim.[3] (Doc. No. 8.)  In their Motion, they argue that the Amended Complaint lacks sufficient factual allegations to support the claims against them.  (See id. at 3.)  In this regard, they first argue that Plaintiff does not allege enough facts to show a violation of her constitutional rights.  (See id. at 6-7.)  Second, Count IV must be dismissed because the Amended Complaint does not include factual averments of an unconstitutional policy, custom, or practice of deliberate indifference, which is required to establish Plaintiff's municipal liability claim.  (See id. at 8.)  Instead, they submit that Plaintiff simply sets forth a series of conclusory allegations that paraphrase the elements of a municipal liability claim.  (See id.)

On November 10, 2020, Plaintiff filed a Response, arguing that the Amended Complaint contains enough factual content to permit a reasonable inference of liability against the City, the Department, Ott Lovell, and Washington.  (See Doc. No. 10 at 6-12.)  In the Response, Plaintiff claims that she provided sufficient details of the alleged attack she suffered to show a violation of her constitutional rights under the Fourteenth Amendment to the United States Constitution.  (See id. at 6-9.)  Further, she contends that she has sufficiently pled at this stage the existence of a policy

---

[3]   The first Motion to Dismiss (Doc. No. 4) was denied without prejudice after the Amended Complaint (Doc. No. 6) was filed.  (See Doc. No. 7.)

or custom or deliberate indifference by the City, the Department, Ott Lovell, and Washington that caused the deprivation of her constitutional rights. (See id. at 10-12.)

For reasons that follow, the Court will grant Defendants' Second Motion to Dismiss (Doc. No. 10) and will dismiss Count IV of the Amended Complaint. The Court, however, will grant Plaintiff leave to amend the Amended Complaint by filing a Second Amended Complaint.

### III.  STANDARD OF REVIEW

The motion to dismiss standard under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted is set forth in Ashcroft v. Iqbal, 556 U.S. 662 (2009). After Iqbal, it is clear that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to defeat a Rule 12(b)(6) motion to dismiss. Id. at 678; see also Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007). "To survive dismissal, 'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Tatis v. Allied Interstate, LLC, 882 F.3d 422, 426 (3d Cir. 2018) (quoting Iqbal, 556 U.S. at 678). Facial plausibility is "more than a sheer possibility that a defendant has acted unlawfully." Id. (quotation marks omitted) (quoting Iqbal, 556 U.S. at 678). Instead, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (quotation marks omitted) (quoting Iqbal, 556 U.S. at 678).

Applying the principles of Iqbal and Twombly, the Third Circuit Court of Appeals in Santiago v. Warminster Township, 629 F.3d 121 (3d Cir. 2010), set forth a three-part analysis that a district court in this Circuit must conduct in evaluating whether allegations in a complaint survive a Rule 12(b)(6) motion to dismiss:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no

6

> more than conclusions, are not entitled to the assumption of truth." Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

Id. at 130 (alteration in original) (quoting Iqbal, 556 U.S. at 675, 679). The inquiry is normally broken into three parts: "(1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011).

A complaint must do more than allege a plaintiff's entitlement to relief, it must "show" such an entitlement with its facts. Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009) (citing Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234-35 (3d Cir. 2008)). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679 (second alteration in original) (citation omitted). The "plausibility" determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.

**IV.   ANALYSIS**

Defendants City of Philadelphia, Philadelphia Parks and Recreation Department, Kathryn Ott Lovell, and Marissa Washington argue that Count IV of the Amended Complaint should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failing to state a claim for which relief can be granted. (See Doc. No. 8 at 3.) Initially, the Court will consider Plaintiff's claim against Defendant Philadelphia Parks and Recreation Department. Next, the Court will analyze whether Plaintiff properly states a claim against Defendant City of Philadelphia. Finally, the Court

will address whether Plaintiff states a claim against individual Defendants Kathryn Ott Lovell and Marissa Washington.[4]

### A. The Claim Against Philadelphia Parks and Recreation Department in Count IV Will Be Dismissed

As an initial matter, the Court will dismiss the claims against the Philadelphia Parks and Recreation Department, which is a named Defendant in Count IV. (See Doc. No. 6 at 12.) This entity is part of the City of Philadelphia—the proper Defendant—and cannot be sued independently of the City.

Under Pennsylvania law,

> [N]o such department shall be taken to have had, since the passage of the act to which this is a supplement, a separate corporate existence and hereafter all suits growing out of their transactions, and all claims to be filed for removing nuisances, together with all bonds, contracts and obligations, hereafter to be entered into or received by the said departments, shall be in the name of the [C]ity of Philadelphia.

53 P.S. § 16257. In accordance with this statute, "[t]he Third Circuit has explicitly stated that, for purposes of section 1983 liability, [a] municipality and [its] . . . department[s] are treated as a single entity." Brown v. Cohen, No. 09-2909, 2011 WL 2110827, at *4 (E.D. Pa. Apr. 21, 2011) (quotation mark omitted) (citing Bonenberger v. Plymouth Twp., 132 F.3d 20, 25 n.4 (3d Cir. 1997)). Thus, because Philadelphia Parks and Recreation, which is a department of the City of Philadelphia, is not amenable to suit, the claim against it will be dismissed. As noted, the City of Philadelphia, which has been sued in this case, is the properly named Defendant.

---

[4] Neither Plaintiff, the City of Philadelphia, Ott Lovell, nor Washington address whether the individual Defendants are being sued in their individual or official capacity. Because an official capacity suit is "to be treated as a suit against [a] [government] entity," Plaintiff cannot sue individual Defendants Ott Lovell and Washington in their official capacity. Kentucky v. Graham, 473 U.S. 159, 166 (1985). For this reason, the Court will construe Count IV as against them only in their individual capacity.

**B.     The Claim Against the City of Philadelphia in Count IV Will Be Dismissed**

Plaintiff's claim in Count IV against the City of Philadelphia will be dismissed. In Count IV, she alleges that the City of Philadelphia violated her rights under the Fourteenth Amendment. (See Doc. No. 6 ¶¶ 84-123.) In the Motion to Dismiss, the City submits that this claim should be dismissed for two reasons. First, it argues that "Plaintiff has failed to provide factual allegations of an underlying constitutional violation." (Doc. No. 8 at 6.) Second, it states that "Plaintiff has failed to allege any facts supporting [her] claim that the City had a policy or custom that was the moving force behind a constitutional violation," and that the City was deliberately indifferent. (Id. at 7.) The Court agrees with the City's second argument.[5]

---

[5] Because the Court will dismiss the Amended Complaint for failing to allege a policy, custom, or deliberate indifference of the City, it need not address whether Plaintiff has pled sufficient facts to establish the first prong of a Monell claim: that she suffered a constitutional violation. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694-95 (1978). In the Motion to Dismiss, the City submits that Plaintiff fails to allege a constitutional violation because: (1) she "does not allege that [Defendant] Daniels violated her constitutional rights, but instead alleges that he committed the state law torts of false imprisonment, assault, and battery[;]" and (2) she "fails to provide factual allegations supporting the manner in which [Defendant] Daniels assaulted her." (Doc. No. 8 at 6.)

In the Amended Complaint, Plaintiff merely asserts that Defendants deprived her of her constitutional rights under the Fourteenth Amendment to the United States Constitution. (See Doc. No. 6 ¶¶ 120-21.) She does not provide, however, further details on whether she alleges a violation of her rights under the Fourteenth Amendment Privileges or Immunities, Due Process, or Equal Protection Clauses. Absent clarification, the Court cannot discern which rights Plaintiff alleges were violated by the conduct of Daniels or the other Defendants.

But the Court does not agree with the City's second argument that Plaintiff has failed to provide sufficient factual allegations "supporting the manner in which [Defendant] Daniels assaulted her." (Doc. No. 8 at 6.) Contrary to the City's claim that Plaintiff merely alleges that she was sexually assaulted, Plaintiff provides ample information on the dates and manner of her alleged assaults. (See, e.g., Doc. No. 6 ¶ 52.)

9

### 1. The Analytical Framework of 42 U.S.C. § 1983 and Monell v. Department of Social Services

Plaintiff raises her claim against the City pursuant to 42 U.S.C. § 1983. (See Doc. No. 6 ¶¶ 116-17.) Section 1983 states in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

§ 1983. In Monell v. Department of Social Services, the United States Supreme Court held that municipal entities can be subject to Section 1983 liability in limited circumstances. 436 U.S. 658, 690 (1978). Under Monell, to state a Section 1983 claim against a municipality, a plaintiff must establish that (1) a constitutionally protected right has been violated, and (2) the alleged violation resulted from a municipal policy, custom, or deliberate indifference. See id. at 694-95; Andrews v. City of Philadelphia, 895 F.2d 1469, 1480 (3d Cir. 1990).

The gravamen of Monell and its progeny is that "recovery from a municipality is limited to acts that are, properly speaking, acts 'of the municipality'—that is, acts which the municipality has officially sanctioned or ordered." Pembaur v. City of Cincinnati, 475 U.S. 469, 480 (1986). In other words, the constitutional deprivation must have its origin in the policy, custom, or deliberate indifference of the municipality, and liability based on the actions of city officials exists only where it can be shown that the officials acted in accordance with that policy, custom, or deliberate indifference. See Monell, 436 U.S. at 694. Moreover, municipalities cannot be held liable under Section 1983 for acts of its employees based on the doctrine of respondeat superior or for other forms of vicarious liability. See id., at 692 (noting that the language of Section 1983 "cannot be easily read to impose liability vicariously on governing bodies solely on the basis of

10

the existence of an employer-employee relationship with a tortfeasor"); see also Reitz v. Cnty. of Bucks, 125 F.3d 139, 146 (3d Cir. 1997) ("[M]unicipal liability simply cannot be predicated upon a showing of respondeat superior.").

### 2. The Amended Complaint Does Not Sufficiently Allege a Municipal Policy, Custom, or Deliberate Indifference

Count IV must be dismissed because Plaintiff has not pled sufficient facts to establish the second prong of a Monell claim: that a municipal policy, custom, or deliberate indifference was the cause of the alleged constitutional violation. See Monell, 436 U.S. at 694-95.

#### i. The Claim of a Policy or Custom by the City of Philadelphia

There are numerous ways a plaintiff can sufficiently allege the existence of a municipal policy or custom to establish a Monell claim. For example, a plaintiff can cite the official policy. See id., 436 U.S. at 690 (stating that a municipality may be sued under Section 1983 when it "implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers."). Alternatively, a plaintiff can make specific reference to "multiple incidents" implicating a particular custom. See Harris v. City of Philadelphia, 171 F. Supp. 3d 395, 401-02 (E.D. Pa. 2016) (finding a custom where there were "multiple incidents" of police officers using reckless and excessive force in their use of batons). A plaintiff also can establish custom by conducting a statistical analysis of lawsuits against a municipality for a violation of a particular constitutional right. See Simpson v. Ferry, 202 F. Supp. 3d 444, 452 (E.D. Pa. 2016) (permitting a Monell claim to proceed following a review of the plaintiff's statistical analysis about the number of lawsuits brought against the Philadelphia Police Department for use of excessive force).

It is insufficient, however, for a plaintiff to merely state the "phraseology" of an alleged policy or custom if the allegations are unaccompanied by supporting facts. Saleem v. Sch. Dist.,

11

No. 12-3193, 2013 WL 5763206, at *3 (E.D. Pa. Oct. 24, 2013) (explaining that pleadings "bereft of any assertions of relevant facts," containing only the "plaintiff's bare allegations . . . are insufficient to show his entitlement to relief."). Accordingly, conclusory and general claims that simply paraphrase Section 1983 will not satisfy federal pleading requirements because they "fail[] to satisfy the 'rigorous standards of culpability and causation' required to state a claim for municipal liability." Wood v. Williams, 568 F. App'x 100, 104 (3d Cir. 2014) (quoting McTernan v. City of York, 564 F.3d 636, 658-59 (3d Cir. 2009)).

Here, the Amended Complaint is replete with bare and conclusory allegations that are insufficient to state a claim under Monell. As noted above, Plaintiff makes the following accusations against the City of Philadelphia regarding their policies or customs:

> Defendant[] . . . created a policy that allowed criminal offenders to be placed in roles such as supervisor as Defendant Michael Daniels was[;] . . . had a policy that did not check the criminal history of those seeking jobs at the . . . Pool[;] . . . had a policy that allowed employees who committed sex offenses to remain in their positions despite their dangerous criminal records[;] . . . had a policy of not performing thorough background checks on employees even those, such as Defendant Michael Daniels, who served in supervisory roles[;] . . . had a policy of ignoring information from background checks that employees or potential employees were a danger to patrons of the . . . Pool or to the employees that they were to supervise[;] . . . had a custom or policy to allow criminal offenders to be placed in roles such as supervisor as Defendant Michael Daniels was[;] . . . had a custom or policy that they did not check the criminal history of those seeking jobs at the John B. Kelly Pool[;] . . . had a custom or policy that allowed employees who committed sex offenses to remain in their positions despite their dangerous criminal records[;] . . . had a custom of not performing thorough background checks on employees even those, such as Defendant Michael Daniels, who served in supervisory roles[;] . . . had a custom of ignoring information from background checks that employees or potential employees were a danger to patrons of the John B. Kelly Pool or to the employees whom they were to supervise[;]   . . . either performed a background check upon Defendant Michael Daniels and ignored the results or failed to perform a background check[;] . . . either performed additional background checks upon Defendant Michael Daniels when he was rehired every year as a seasonal employee and ignored the results or failed to perform these background checks[;] . . . [and] either performed additional background checks upon Defendant Michael Daniels when he was promoted to a supervisory position and ignored the results or failed to perform these background checks.

12

(Doc. No. 6 ¶¶ 97-106, 108, 110-11.)

In the above recitation, Plaintiff merely uses the framework of a Monell claim and does not proffer facts beyond referencing Daniels to suggest that the City of Philadelphia created or implemented the alleged policies or customs. Further, the allegations in the Amended Complaint concern only the purported experiences of Plaintiff with Defendant Daniels. (See id.) No policy, statement, ordinance, regulation, or decision officially adopted and promulgated by City officials has been alleged. And absent a showing of comparable instances evidencing a pattern, the Court cannot conclude that Plaintiff's allegations reflect a City custom. Thus, it is an untenable stretch to extrapolate from Plaintiff's accusations involving Daniels that a City-wide policy or custom was in place.

### ii. The Claim of Deliberate Indifference by City of Philadelphia

Moreover, to the extent Plaintiff attempts to establish that the City was deliberately indifferent to systemic Fourteenth Amendment abuses by failing to perform employee background checks or ignoring the results of such background checks, this claim also fails. In certain circumstances, a municipality may be liable under Section 1983 when it decides "not to train certain employees about their legal duty to avoid violating citizens' rights," and this failure "amount[s] to 'deliberate indifference to the rights of persons with whom the [untrained employees] come into contact.'" Connick v. Thompson, 563 U.S. 51, 61 (2011) (second alteration in original) (quoting City of Canton v. Harris, 489 U.S. 378, 388 (1989)).[6] "A pattern of similar

---

[6] The idea behind the failure-to-train theory is that when "city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights, the city may be deemed deliberately indifferent if the policymakers choose to retain that program." Connick v. Thompson, 563 U.S. 51, 61 (2011). A city's "policy of inaction" in the face of such notice is functionally equivalent to a decision to violate the Constitution and thus, in effect, becomes the city's custom. Id. at 61.

13

constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." Id. at 62 (quoting Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown, 520 U.S. 397, 409 (1997)).

The Third Circuit considers the following factors in determining whether the deliberate indifference standard is met:

> (1) municipal policymakers know that employees will confront a particular situation[,] (2) the situation involves a difficult choice or a history of employees mishandling[,] and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights.

Estate of Roman v. City of Newark, 914 F.3d 789, 798 (3d Cir. 2019) (alterations in original) (quoting Doe v. Luzerne Cnty., 660 F.3d 169, 180 (3d Cir. 2011)).

In the Amended Complaint, Plaintiff provides no facts to support any of these three factors. Other than conclusory allegations that the City "either performed a background check upon Defendant Michael Daniels and ignored the results or failed to perform a background check," Plaintiff provides no facts suggesting the City was on notice that it had failed to train its employees to perform proper background checks on prospective and current employees. (Doc. No. 6 ¶ 108.) Further, Plaintiff does not state how failing to perform these background checks "will frequently cause deprivation of constitutional rights." Estate of Roman, 914 F.3d at 798. As a result, Plaintiff has not properly alleged that the City has engaged in deliberate indifference. Consequently, for all the above reasons, Count IV will be dismissed as to the City of Philadelphia.

### C. The Claim Against Individual Defendants Kathryn Ott Lovell and Marissa Washington in Count IV Will Be Dismissed

In Count IV of the Amended Complaint, Plaintiff asserts Section 1983 allegations against Kathryn Ott Lovell and Marissa Washington ("Individual Defendants") based on their positions as Commissioner and Deputy Commissioner of Administration of the Philadelphia Parks and

14

Recreation Department. (See Doc. No. 6 ¶¶ 86-93.) Plaintiff's claim in Count IV against these Individual Defendants will be dismissed because she does not allege their personal involvement as supervisors in the alleged constitutional violations.

To state a claim against a defendant in his or her individual capacity under Section 1983, a plaintiff must establish that the defendant had personal involvement in committing the alleged violation. See Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) ("A defendant in a civil rights action must have personal involvement in the alleged wrongs . . . .") ; see also Agresta v. City of Philadelphia, 801 F. Supp. 1464, 1468 (E.D. Pa. 1992) (explaining that the liability of an individual officer "must be based on his [or her] own acts or omissions, not those of [other] individual officers"). Further, because there can be no vicarious liability claims under Section 1983, the mere fact that a named defendant is in a supervisory position is insufficient to establish liability. See Reaves v. Vaugh, No. 00-2786, 2001 WL 936392, at *4 (E.D. Pa. Aug. 10, 2001).

"A plaintiff can show the personal involvement of a supervisor through allegations of personal direction or actual knowledge and acquiescence, so long as those allegations are made with particularity." Davenport v. City of Philadelphia, No. 16-6397, 2018 WL 5313021, at *7 (E.D. Pa. Oct. 26, 2018). "Conclusory allegations and formulaic recitations of law," however, are insufficient to establish that a supervisor was personally involved in the deprivation of constitutional rights underlying a Section 1983 claim. Id.; see also Santiago, 629 F.3d at 131.

Here, Plaintiff fails to state a claim against Individual Defendants because she does not allege that they were personally involved in committing the alleged constitutional violation. Instead, Plaintiff relies entirely on Individual Defendants' supervisory positions as the basis for their liability. In the Amended Complaint, Plaintiff alleges that Defendant Ott Lovell, as Commissioner of the Philadelphia Parks and Recreation Department, "overs[ees] approximately

700 full-time employees as well as more than 2,700 part-time and seasonal employees," including Defendant Daniels. (Doc. No. 6 ¶ 87; see also id. ¶ 89.) Additionally, Plaintiff claims that Defendant Washington, as Deputy Commissioner of the Administration of Philadelphia Parks and Recreation Department, "oversees several departmental units including human resources . . . [and] performed the Human Resources function for employees such as Defendant . . . Daniels." (Id. ¶¶ 91, 93.)

These statements alone are insufficient to show that Individual Defendants had personal involvement in Defendant Daniels' alleged attacks on Plaintiff. Plaintiff does not offer facts that Individual Defendants knew about Daniels' criminal history or his purported attacks on her.[7] Without a showing that Individual Defendants were personally involved in the decision-making or in the events that led to Plaintiff's purported injuries, no claim against them under Section 1983 can survive. Therefore, the claims against Individual Defendants in Count IV also will be dismissed.

### D. Plaintiff Will Be Granted Leave to Amend the Amended Complaint and to File a Second Amended Complaint

Despite the Amended Complaint's deficiencies described above, Plaintiff will be granted leave to amend it by filing a Second Amended Complaint. Federal Rule of Civil Procedure 15(a)(2) states, "a party may amend its pleading only with the opposing party's written consent or the court's leave" and that "[t]he court should freely give leave when justice so requires." "To accomplish the dual objectives of weeding out frivolous cases and keeping federal courts open to legitimate civil rights claims, courts should allow liberal amendment of civil rights complaints

---

[7] Plaintiff illustrates Ott Lovell's lack of personal involvement by noting in the Amended Complaint that "[w]hen asked about how Defendant Daniels had been hired and retained with his criminal record, Defendant . . . Ott Lovell said, 'I have not looked at his background so I can't speak to that.'" (Doc. No. 10 at 4) (citing Doc. No. 6 ¶ 58).

under Fed. R. Civ. P. 15(a)." Rotolo v. Borough of Charleroi, 532 F.2d 920, 923 (3d Cir. 1976). Additionally, The Third Circuit has admonished that for civil rights claims, "if a complaint is vulnerable to 12(b)(6) dismissal, a District Court must permit a curative amendment, unless an amendment would be inequitable or futile." Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004).

Here, the Court cannot conclude that allowing amendment would be inequitable or futile. The allegations are serious and specific as to Daniels' actions, but it would be in the interest of justice to afford Plaintiff one more opportunity to file a Second Amended Complaint, and only if in doing so, she can overcome the deficiencies discussed in this Opinion. For these reasons, the Court will grant Plaintiff leave to file another Complaint in accordance with this Opinion.

## V.     CONCLUSION

For the foregoing reasons, the Motion to Dismiss (Doc. No. 8) filed by Defendants City of Philadelphia, the Philadelphia Parks and Recreation Department, Ott Lovell, and Washington will be granted and Count IV of the Amended Complaint will be dismissed. Plaintiff will be granted leave to file a Second Amended Complaint. An appropriate Order follows.