IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| ELLEN EWING | : | |
| | : | |
| Plaintiff, | : | |
| | : | CIVIL ACTION |
| v. | : | NO. 20-3170 |
| | : | |
| THE CITY OF PHILADELPHIA, et al., | : | |
| | : | |
| Defendants. | : | |

**OPINION**

**Slomsky, J.**                                                                                                          **December 30, 2021**

**I.     INTRODUCTION**

This action arises out of allegations by Plaintiff Ellen Ewing ("Plaintiff" or "Ewing"), a former lifeguard hired by Defendant City of Philadelphia ("the City"), that Defendant Michael Daniels ("Daniels"), a former City employee who was a supervising lifeguard, falsely imprisoned, assaulted, and battered her.[1] (See Doc. No. 17 at 10-15.) Daniels has a history of criminal wrongdoing, including robbery, extortion, and indecent exposure, among other things. (Id.) Plaintiff worked as a lifeguard under Daniels during the summer of 2018. (Id.)

---

[1] Plaintiff filed her initial Complaint (Doc. No. 1) against six Defendants: (1) The City of Philadelphia, (2) Philadelphia Parks and Recreation Department, (3) the Fairmount Park Conservancy, (4) Philadelphia Parks and Recreation Commissioner Kathryn Ott Lovell, (5) Philadelphia Parks and Recreation Deputy Commissioner of Administration Marissa Washington, and (6) Michael Daniels. (See Doc. No. 6 at 1.) Defendants Philadelphia Parks and Recreation Department and the Fairmount Park Conservancy have been dismissed as Defendants in this action.

1

In addition to asserting in this case constitutional claims against Daniels,[2] Plaintiff also alleges that the City, Kathryn Ott Lovell ("Ott Lovell"), Commissioner of the Philadelphia Parks and Recreation Department, and Marissa Washington ("Washington"), the Deputy Commissioner of Administration (collectively "City Defendants"), violated her substantive due process rights.[3] (See Doc. No. 17 ¶¶ 59, 61-62, 64.)   According to Plaintiff, the violations arose because City Defendants created a custom of ignoring background clearance requirements and because the same Defendants were deliberately indifferent to the need to properly train its employees on how to conduct background checks. (Id. at ¶¶ 105-53.)  The claims are brought under 42 U.S.C. § 1983.

On September 28, 2020, Defendants City of Philadelphia, Ott Lovell, and Washington filed their first Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. (Doc. Nos. 4-5.)  In response, Plaintiff filed an Amended Complaint.[4]  (Doc. No. 6.)   Defendants then filed a second Motion to Dismiss the Amended

---

[2]  Daniels has not been served with the Second Amended Complaint.  All claims against him remain and the Court need not discuss them further.

[3]  The Due Process Clause of the Fourteenth Amendment has two prongs: procedural due process and substantive due process.  To state a claim under § 1983 for deprivation of procedural due process, "a plaintiff must allege that (1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property,' and (2) the procedures available to him did not provide 'due process of law.'" Hill v. Kutztown, 455 F.3d 225, 233-34 (3d Cir. 2006) (citing Alvin v. Suzuki, 227 F.3d 107, 116 (3d Cir.2000)).

A substantive due process claim is different and "is reserved for the most egregious governmental abuses against liberty or property rights, abuses that 'shock the conscience or otherwise offend . . . judicial notions of fairness. . . [and that are] offensive to human dignity.'" River Nile Invalid Coach and Ambulance, Inc. v. Velez, 601 F.Supp.2d 609, 621 (D. N.J. 2009) (quoting Weimer v. Amen, 870 F.2d 1400, 1405 (8th Cir. 1989)).  Here, the Court construes the SAC as alleging against all Defendants only a substantive due process violation.

[4]  The first Motion to Dismiss was denied without prejudice as moot. (See Doc No 7.)  This Motion also was filed by Defendant Fairmount Park Conservancy. (Doc. Nos. 4.)  Fairmount Park Conservancy has settled with Plaintiff.  (See Doc. No. 14.)

2

Complaint. (See Doc. No. 8.) On April 22, 2021, in an Opinion and Order, the Court granted Defendants' Motion to Dismiss the Amended Complaint, but afforded Plaintiff the opportunity to file a Second Amended Complaint ("SAC").[5] (Doc. No. 15 at 3-4.)

Plaintiff subsequently filed the SAC, which is the operative Complaint here. (Doc. No. 17.) Defendants have filed a Third Motion to Dismiss (Doc. No. 18.) On June 18, 2021, Plaintiff filed a Response in Opposition. (Doc. No. 19.) For reasons that follow, the Third Motion to Dismiss will be granted in part and denied in part.

## II.   BACKGROUND

### A. Factual Background

In the Opinion and Order dated April 22, 2021, this Court dismissed Plaintiff's § 1983 claims against City Defendants, holding that Plaintiff did not sufficiently allege (1) the presence of a municipal custom or deliberate indifference or (2) that Defendants Ott Lovell and Washington were personally involved in the alleged constitutional violations. (See Doc. No. 15 at 11-16.) The Court, however, afforded Plaintiff the opportunity to "overcome the deficiencies discussed" in the Opinion and granted her leave to file a SAC. (Id. at 17.) Plaintiff filed the SAC on May 13, 2021. (Doc. No. 17.) In the SAC, Plaintiff alleges the following facts.[6]

In 2000, Defendant Daniels was hired by the City's Parks and Recreation Department as a seasonal lifeguard at the John B. Kelly Pool (the "Pool"), which was operated by the City. (Doc.

---

[5] The April 22, 2021 Opinion and Order dismissed all claims against Philadelphia Parks and Recreation Department. (See Doc. No. 15.) The SAC contains no claims against Philadelphia Parks and Recreation Department. Therefore, all claims against it are dismissed.

[6] The following facts are taken from the SAC (Doc. No. 17) and attached exhibits and are accepted as true for purposes of this Opinion. See Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) ("In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the [plaintiff's] claims are based upon these documents.").

No. 17 ¶¶ 13, 18.) From 2001 to 2015, Daniels pled guilty to numerous crimes, including criminal mischief, unauthorized use of automobiles, robbery, extortion, theft, impersonating a public servant, harassment, making terroristic threats, and indecent exposure. (See id. ¶¶ 20, 24, 28, 33.)

Plaintiff was hired in the summer of 2018 by the City to work as a lifeguard at the Pool. (See id. ¶ 40.)  In this role, Plaintiff reported directly to Daniels. (See id. ¶ 40-41.) Earlier that year, Daniels had applied for, and was granted, a promotion to a supervisory position at the Pool. (See id. ¶ 36.) In this role, he supervised several lifeguards, some of which, including Plaintiff, were under the age of eighteen. (Id. ¶ 37.) Prior to the start of Plaintiff's employment, she claims that City Defendants ignored her background clearance requirements. (Id. at ¶ 121.)

During the course of her employment, between July 16, 2018 and August 10, 2018, she claims that Daniels did the following without her consent:

> a. Lured . . . Plaintiff into the break room at the [P]ool;
> b. Cornered . . . Plaintiff in the break room;
> c. Closed the door to the break room and would not let Plaintiff leave;
> d. Kept Plaintiff in the break room against her consent;
> e. Willfully restrained the minor Plaintiff;
> f. Intended to confine the Plaintiff and did confine the Plaintiff;
> g. Held the Plaintiff against her will; and
> h. Repeatedly sexually assaulted the minor Plaintiff.

(Id. ¶ 43.) As a result of these alleged actions, Daniels was arrested and charged with the following crimes: (1) unlawful contact with a minor; (2) corruption of minors; (3) indecent assault; (4) unlawful restraint of a minor where offender is not the victim's parent; and (5) endangering welfare of children. (See id. ¶ 45.)[7]

---

[7] According to the Docket in the Philadelphia Court of Common Pleas (Docket No. CP-51-CR-0006783-2018), Daniels was held for trial on all charges. The case is still open. https://ujsportal.pacourts.us/Report/CpDocketSheet?docketNumber=CP-51-CR-0006783-2018&dnh=VD4JN1OojmxnyIL6pgSm9Q%3D%3D.

The SAC identifies three official policies requiring a background check on Daniels which, according to Plaintiff, if done properly, would have disqualified him from his position at the pool:

1. Child Protective Services Law ("CPSL");

2. "Policy on Required Background Clearances for Volunteers and Persons having Direct or Indirect Contact with Youth at Philadelphia Parks and Recreation Facilities" ("Policy"); and

3. The City's executive order requiring each of its agencies "to identify 'Sensitive Positions' requiring criminal background checks" which includes "[l]ifeguards[] and supervisors/managers of City pool facilities." ("Executive Order")

(Doc. No. 17 ¶¶ 46-56.)

The CSPL, which is the first policy, states in relevant part:

> In no case shall an employer, administrator, supervisor or other person responsible for employment decisions or involved in the selection of volunteers hire or approve an applicant if the applicant's criminal history record information indicates the applicant has been convicted of one or more of the following offenses under Title 18 (relating to crimes and offenses) or an equivalent crime under Federal law or the law of another state:  Section 2702 (relating to aggravated assault) . . . Section 2902 (relating to unlawful restraint) . . . Section 3127 (relating to indecent exposure)

Pa. C.S.A § 6344(c)(2). [8]

---

[8] Additionally, the Policy "applies to all persons serving in any capacity of any program or activity having direct or indirect contact with youth, age 18 years or younger, on a regular, recurring, or intermittent basis." (Doc. No. 17-1.) The statute also provides that "[a]n employer, administrator, supervisor or other person responsible for employment decisions that intentionally fails to require an applicant to submit the required documentation before the applicant's hiring or upon recertification commits a misdemeanor of the third degree." § 6344(b)(2).

5

The objective of the second policy is "[t]o ensure that all individuals serving at Philadelphia Parks & Recreation ("PPR") facilities . . . have the current and appropriate Criminal Background check, Child Abuse Clearance, and FBI Clearance prior to, and throughout the duration, of their service." (Doc. No. 17-1.)  Finally, policy three, the Executive Order, identifies "sensitive positions," which include lifeguards, that require a background check. (Id. at ¶ 56.) By highlighting the three policies, the SAC asserts that Defendants were "aware of" their purpose to "keep minors, who are particularly vulnerable to being harmed, from being preyed upon by employees who should not be in contact with them," and by ignoring them, Defendants created a "potential for danger" to minors. (Id. ¶¶ 108-10.)

The SAC further alleges two claims under § 1983 against City Defendants for committing Fourteenth Amendment Substantive Due Process violations.[9] In Count IV, the SAC alleges that City Defendants created "a custom to ignore the background clearance requirements for employees and volunteers who were likely to have contact with minors in order to more quickly staff the positions needed at the Pool and the other City parks." (Id. ¶ 111.)  Count V alleges the City Defendants were deliberately indifferent by failing to properly train employees responsible for performing background checks. (See id. ¶ 142.)  Both Counts IV and V allege that the City is liable under Monell v. Department of Social Services, 436 U.S. 658 (1978), and that Ott Lovell and Washington are liable in their individual capacity.

---

[9]  Plaintiff asserts in Counts I to III constitutional claims against Daniels under to § 1983. (See id. at 10-15.) These claims relate to actions taken by Daniels against her and are not subject to a Motion to Dismiss.

### B. Defendants' Third Motion to Dismiss

On May 28, 2021, Defendants filed a Third Motion to Dismiss. Defendants argue that the due process violations against them should be dismissed because: (1) Plaintiff fails to establish "that the City decisionmakers created or approved an unconstitutional custom that was the moving force behind the alleged constitutional violation;" (2) Plaintiff has not shown that "City decisionmakers were deliberately indifferent to the risk of a constitutional violation stemming from" the failure to properly conduct background checks; and (3) Plaintiff fails to establish that Defendants Ott Lovell and Washington were personally involved in the alleged constitutional violations. (Doc. No. 18 at 1-2.)

On June 18, 2021, Plaintiff filed a Response in Opposition. (Doc. No. 19.) Plaintiff asserts that because Daniels's fifteen-year criminal history went undetected by City Defendants, this creates an inference that they had a custom of not conducting background checks. (See id. at 9.) Additionally, Plaintiff contends that that the CPSL, the Policy, and the Executive Order put Defendants on notice that failing to properly train employees on how to conduct background checks on individuals likely to be in contact with minors amounts to deliberate indifference. (See id. at 12-13.) Lastly, Plaintiff avers that Ott Lovell and Washington were personally involved in the deprivation of Plaintiff's constitutional rights because they "were aware that the custom [of ignoring background checks] would likely lead to the violation of the constitutional rights of those under 18 who came into contact with employees who had criminal backgrounds related to child abuse." (Id. at 22.) For reasons that follow, Defendants' Motion to Dismiss will be granted in part and denied in part.

### III. STANDARD OF REVIEW

The motion to dismiss standard under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted is set forth in Ashcroft v. Iqbal, 556 U.S. 662 (2009). After Iqbal, it is clear that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to defeat a Rule 12(b)(6) motion to dismiss. Id. at 678; see also Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007). "To survive dismissal, 'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Tatis v. Allied Interstate, LLC, 882 F.3d 422, 426 (3d Cir. 2018) (quoting Iqbal, 556 U.S. at 678). Facial plausibility is "more than a sheer possibility that a defendant has acted unlawfully." Id. (quotation marks omitted) (quoting Iqbal, 556 U.S. at 678). Instead, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (quotation marks omitted) (Iqbal, 556 U.S. at 678).

Applying the principles of Iqbal and Twombly, the Third Circuit Court of Appeals in Santiago v. Warminster Township, 629 F.3d 121 (3d Cir. 2010), set forth a three-part analysis that a district court in this Circuit must conduct in evaluating whether allegations in a complaint survive a Rule 12(b)(6) motion to dismiss:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

Id. at 130 (alteration in original) (quoting Iqbal, 556 U.S. at 675, 679). The inquiry is normally broken into three parts: "(1) identifying the elements of the claim, (2) reviewing the complaint to

strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011).

A complaint must do more than allege a plaintiff's entitlement to relief, it must "show" such an entitlement with its facts. Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009) (citing Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234-35 (3d Cir. 2008)). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679 (second alteration in original) (citation omitted). The "plausibility" determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.

## IV. ANALYSIS

City Defendants argue that Counts IV (custom) and V (deliberate indifference) of the SAC should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failing to state a claim for which relief can be granted. (See Doc. No. 18 at 1-2.) In deciding this claim, the Court first will discuss the analytical framework under § 1983 and Monell v. Department of Social Services. Second, each claim will be considered as it relates to the City.[10] Finally, the Court will discuss each claim as it relates to Ott Lovell and Washington.

---

[10] In Counts IV and V of the SAC, Plaintiff has named as defendants in each Count, the City, Ott Lovell, and Washington. Because the allegations asserted against them are described in a single Count, the Court has attempted to separate the claims consistent with the language in the Count.

### A. The Analytical Framework of 42 U.S.C. § 1983 and <u>Monell v. Department of Social Services</u>

Plaintiff alleges that Defendants had a custom of ignoring statutory requirements for mandatory background checks for incoming employees and exhibited deliberate indifference by failing to properly train employees on how to conduct background checks, all in violation of Plaintiff's Fourteenth Amendment due process rights under § 1983. Section 1983 states, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. In <u>Monell v. Department of Social Services</u>, the United States Supreme Court held that municipal entities can be subject to § 1983 liability in limited circumstances. 436 U.S. 658, 690 (1978). Under <u>Monell</u>, to state a § 1983 claim against a municipality, a plaintiff must establish that (1) a constitutionally protected right has been violated,[11] and (2) the alleged violation resulted from a municipal policy, custom, or deliberate indifference.[12] <u>See id.</u> at 694-95; <u>Andrews v. City of Philadelphia</u>, 895 F.2d 1469, 1480 (3d Cir. 1990).

The gravamen of <u>Monell</u> and its progeny is that "recovery from a municipality is limited to acts that are, properly speaking, acts 'of the municipality'—that is, acts which the municipality has officially sanctioned or ordered." <u>Pembaur v. City of Cincinnati</u>, 475 U.S. 469, 480 (1986).

---

[11] Defendants do not contend in their Motion that Plaintiff has not established a violation of a constitutionally protected right. Therefore, this element will be considered met and need not be discussed further in this Opinion.

[12] Plaintiff does not allege in the SAC a <u>Monell</u> claim based upon the "policy" prong.

In other words, the constitutional deprivation must have its origin in the policy, custom, or deliberate indifference of the municipality, and liability based on the actions of city officials exists only where it can be shown that the officials acted in accordance with that policy, custom, or deliberate indifference.  See Monell, 436 U.S. at 694.

As the Third Circuit explained in Forrest v. Perry:

> [A] § 1983 claim against a municipality may proceed in two ways. A plaintiff may put forth that an unconstitutional policy or custom of the municipality led to his or her injuries, or that they were caused by a failure or inadequacy by the municipality that "reflects a deliberate or conscious choice."

930 F.3d 93, 105 (3d Cir. 2019) (internal citations omitted).

### B. Claims against the City of Philadelphia

**1. Defendant City of Philadelphia's Motion to Dismiss Count IV will be granted because Plaintiff has not established a Monell claim based on custom.**

In Count IV, Plaintiff alleges that Defendant City of Philadelphia violated her substantive due process rights under the Fourteenth Amendment by creating a custom of ignoring background clearance requirements for incoming employees as required by the three policies noted above, the CPSL, the Policy, and the Executive Order.  (See Doc. 17 at 7-8, ¶¶ 46-54.)  In their Third Motion to Dismiss, Defendants contend that this claim should be dismissed because Plaintiff fails to establish "that the City decisionmakers created or approved an unconstitutional custom that was the moving force behind the alleged constitutional violation."  (See Doc. No. 18 at 1.)  For reasons that follow, the claims in Count IV against the City of Philadelphia will be dismissed.

A custom "is an act 'that has not been formally approved by an appropriate decision-maker,' but that is 'so widespread as to have the force of law.'"  Natale v. Camden Cty. Corr. Facility, 318 F.3d 575, 584 (3d Cir.2003) (quoting Bd. of the Cnty. Comm'rs of Bryan Cnty. v. Brown, 520 U.S. 397, 404, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997)).  A plaintiff can show custom in a variety of

ways.  For instance, he or she can make specific reference to "multiple incidents" which establish a particular custom.  See Harris v. City of Philadelphia, 171 F. Supp. 3d 395, 401-02 (E.D. Pa. 2016) (finding a custom where there were "multiple incidents" of police officers using reckless and excessive force in their use of batons).  Moreover, a plaintiff can conduct a statistical analysis of lawsuits against a municipality for a violation of a particular constitutional right.  See Simpson v. Ferry, 202 F. Supp. 3d 444, 452 (E.D. Pa. 2016) (permitting a Monell claim to proceed following a review of the plaintiff's statistical analysis about the number of lawsuits brought against the Philadelphia Police Department for use of excessive force).

Here, the SAC provides no factual support, statistical or otherwise, for its assertions that the City consistently failed to properly conduct background checks of its employees.  Plaintiff alleges only that the City ignored the background clearance requirements for herself and Daniels.[13]  Apart from these two instances, the language in the SAC that the City failed to properly perform background checks is conclusory.  And alleging two instances of the City failing to conduct background checks is not sufficient enough to plausibly suggest that there was a widespread custom.  See e.g., Mulholland v. Gov't Cnty. of Berks, 706 F.3d 227, 238-39 (3d Cir. 2013) (upholding district court's finding that single deviation from policy requiring compliance with CPSL "cannot be said to have been influenced by some 'policy or custom of [a municipal agency]'") (citation omitted).  It follows that two deviations by a City that employs thousands of people would not establish a "custom."  Accordingly, Count IV will be dismissed as to the City.

---

[13]  With respect to Daniels, given the fifteen-year timeframe of his criminal violations, an inference arises that the City did not do a proper background check on him.

> 2. **Plaintiff has stated a Monell claim for deliberate indifference against the City because the SAC alleges that the City knew that the failure to properly train its employees on how to conduct background checks would result in frequent constitutional violations.**

As noted, in Count V, Plaintiff asserts that the City was deliberately indifferent to violations of her constitutionally protected rights. (See Doc. No. 17 at 17.) Specifically, Plaintiff contends that the City did not properly train its employees on how to perform background checks. (Id. at ¶ 140.) In their Motion to Dismiss, the City argues that Plaintiff offers only conclusory allegations that the City was deliberately indifferent to the risk of constitutional violations stemming from the failure to properly train employees on how to perform background checks. (Doc. No. 18 at 1-2.)

When the alleged "custom at issue is a failure to train or supervise, the plaintiff must show that this failure 'amounts to deliberate indifference to the rights of persons with whom [the municipality's] employees will come into contact.'" Johnson v. City of Philadelphia, 403 (3d Cir. 2020) (internal quotation marks omitted) (quoting Thomas v. Cumberland Cnty., 749 F.3d 217, 222 (3d Cir. 2014) (citation omitted)). In the failure-to-train context, the United States Supreme Court explained the scope of liability as follows:

> It may seem contrary to common sense to assert that a municipality will actually have a policy of not taking reasonable steps to train its employees. But it may happen that in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need.

Harris, 489 U.S. at 390.

And although it is true that "a pattern of similar constitutional violations by untrained employees is ordinarily necessary" to make out a failure to train claim under Monell, the need for training in a given situation may be "so obvious" that failure to do so amounts to an

unconstitutional policy "even without a pattern of constitutional violations." Davis v. City of Philadelphia, 284 F. Supp. 3d 744, 756 (E.D. Pa. 2018) (quoting Thomas v. Cumberland Cty., 749 F.3d 217, 223 (3d Cir. 2014)).

In the Third Circuit, the following elements determine whether a plaintiff can state a claim for deliberate indifference:

> (1) municipal policymakers know that employees will confront a particular situation, (2) the situation involves a difficult choice or a history of employees mishandling, and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights.

Forrest, 930 F.3d at 106 (citing Carter v. City of Philadelphia, 181 F.3d 339, 357 (3d Cir. 1999)). When alleging a claim for deliberate indifference, a plaintiff need not identify a specific municipal policymaker.  See Erdreich v. City of Philadelphia, 18-CV-2290, 2020 WL 1888957 at * 16 (citing Natale v. Camden Cnty. Corr. Facility, 318 F.3d 575, 584 (3d Cir. 2003)) (noting that while "plaintiff does not identify a specific municipal policymaker, based on the strength of the allegations in the [complaint], an inference may be made that policymakers" did not properly train police officers in providing adequate medical care).

Here, Plaintiff has alleged sufficient facts showing that the City was deliberately indifferent to her rights and the rights of others similarly situated by failing to train its employees on how to properly conduct background checks.  She explains that Daniels worked as a lifeguard despite the three policies described above that would have disqualified him from the position.  (Doc. No. 17 at ¶ 142.)   Additionally, the three policies are evidence that the City knew the consequences to minors of failing to properly train its employees in conducting background checks.  Thus, a discussion of each element of deliberate indifference ensues.

> a. **Defendants knew that employees will confront this particular situation.**

The first element is whether municipal policymakers would know that the employees will confront a particular situation. In the SAC, Plaintiff alleges that "Defendants . . . were aware of the purpose of the CPSL" and that "[t]he written Policy itself is evidence that the Defendants were aware of the consequences and danger caused by ignoring the stated Policy." (Doc. No. 19 at 15-16) (internal quotation marks omitted) (quoting Doc. No. 17 ¶ 60.) In its Motion, the City does not argue that it did not know that employees in certain positions would be in contact with minors who would be placed in a compromising position. For this reason, this element is uncontested.

In any event, the SAC plausibly alleges that, at a minimum, the City was on notice, given the purpose of the three policies, which was to ensure that supervisors who will be in direct or indirect contact with minors underwent mandatory background screenings. Additionally, there is little doubt that the CPSL, Policy, and Executive Order were enacted in order to prevent the types of injuries alleged in this case. Therefore, when viewing the allegations in the SAC in a light most favorable to Plaintiff, it is plausible that the City knew that its employees would encounter this situation.

> b. **Employees had a powerful incentive to make the wrong choice.**

The second element covers situations involving difficult choice or a history of employee mishandling. "A 'difficult choice' is one that requires more than the application of common sense" or that may exist where "although the proper course is clear, the employee has powerful incentives to make the wrong choice." Peters v. Cmty. Educ. Ctrs., Inc., No. 11-0850, 2014 WL 981557, at *8 (E.D. Pa. Mar. 13, 2014) (quoting Walker v. City of New York, 974 F.2d 293, 297-98 (2d Cir. 1992)). The "employees" in this case are the City employees who conduct background checks.

See e.g., id. (noting that correctional officers did not have a difficult choice when it came to addressing the special needs of inmates).

Here, the SAC alleges that "Defendants . . . were . . . aware that employees had difficulty finding qualified applicants for positions and would be forced to decide between filling the position or performing a background check and possibly disqualifying the only applicant." (Doc. No. 17 ¶ 140; see also id. ¶ 129.) Ordinarily, the choice to require an incoming employee to undergo a background check is simple. But taking all facts in the Complaint as true, the SAC sufficiently alleges the existence of "powerful incentives" to make the wrong choice despite a simple and straightforward one. Accordingly, Plaintiff has met her burden in alleging the second prong of deliberate indifference.

### c. Plaintiff has shown that failing to properly conduct background checks would frequently cause constitutional deprivations.

Finally, Plaintiff asserts that she has met the third element: the wrong choice by City employees could cause constitutional violations to her and those similarly situated. (See Doc. No. 17 at 21 ¶144.) In response, the City argues that Plaintiff's failure to train claim should be dismissed because there is no evidence that the failure to screen employees has caused a pattern of constitutional violations. But as noted earlier, the need for training may be "so obvious" that the failure to do so amounts to an unconstitutional policy even without a pattern of constitutional violations.

Here, based on the facts alleged in the SAC, and viewing them in a light most favorable to Plaintiff, the need to properly train City employees on how to conduct background checks is "so obvious" that the failure to do so amounts to deliberate indifference. In this case, it is evident that City employees need more or different training in conducting the checks. Based on the strength of the allegations in the SAC, it plausibly alleged that City policymakers did not train City

employees on how to properly conduct background checks, especially for positions involving frequent contact with minors. Further, failing to properly investigate employees' backgrounds could frequently cause Fourteenth Amendment violations, such as those experienced by Plaintiff. For all these reasons, the City's Motion to Dismiss Count V will be denied.

### C. Counts IV and V against Ott Lovell and Washington will be dismissed because the SAC does not allege sufficient facts to show that either were personally involved in the constitutional violations.

Finally, Plaintiff contends that Defendants Ott Lovell and Washington were personally involved in her constitutional injuries. In their Motion, both Defendants state that Plaintiff fails to establish personal involvement. (Doc. No. 18 at 1-2.) Specifically, they ask the Court to disregard Plaintiff's "conclusory assertions that Defendants Ott Lovell or Washington were aware of the custom at issue or were deliberately indifferent to the risk posed by inadequate screening for newly-hired employees." (Doc. No. 18 at 11.)  They further allege that the SAC shows that they were not personally involved with Daniels or the allegations made by Plaintiffs against him because they are supervisors in a Department with 700 full-time employees and more than 2,200 part-time, seasonal employees.

As supervisors, their liability is analyzed based on this position. To succeed on a supervisory liability theory, a plaintiff must show that (1) a supervisor's personal involvement (2) proximately caused (3) plaintiff's injury. [14] Santiago, 629 F.3d at 129-30. Personal involvement can be alleged in two ways. The first theory provides that:

> Individual defendants who are policymakers may be liable under § 1983 if it is shown that such defendants, "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm."

---

[14]  Defendants have not contested either the proximate cause and injury elements in their Motion to Dismiss. Thus, these elements of supervisory liability are considered established.

A.M. v. Luzerne Cnty. Juvenile Det. Ctr., 372 F.3d 572, 586 (3d Cir. 2004) (quoting Stoneking v. Bradford Area Sch. Dist., 882 F.2d 720, 725 (3d Cir.1989). Second, "a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations. Id. (quoting Baker v. Monroe Township, 50 F.3d 1186, 1190–91 (3d Cir.1995)).

To establish knowledge and acquiescence of a subordinate's misconduct, a plaintiff must allege the defendant's (1) contemporaneous knowledge of the offending incident or knowledge of similar incidents in the past, and (2) actions or inactions which communicated approval of the subordinate's behavior. Broadwater v. Fow, 945 F.Supp.2d 574, 588 (M.D. Pa. 2013) (citing C.H. ex rel. Z.H. v. Oliva, 226 F.3d 198, 202 (3d Cir.2000). Allegations of participation or actual knowledge and acquiescence must be made with appropriate particularity. Rode v. Dellaciprete, 845 F.2d 1195, 1207 (3d Cir. 1988).

Both the SAC and the Motion to Dismiss discuss the second basis of supervisory liability. More specifically Plaintiff alleges that both Ott Lovell and Washington "had knowledge and acquiesced in [their] subordinates" violations." Baker, 50 F.3d at 1190–91. The SAC, however, does not allege in Counts IV and V the appropriate level of particularity to show that Plaintiff is entitled to relief against Ott Lovell and Washington based upon the theory of supervisory liability. No allegations are made that they personally were aware not only of Daniels background, but also that a proper background check on him was not done. Merely alleging that they "had knowledge and acquiesced in their subordinates' violations" is conclusory and only a threadbare recital of alleged liability.

Court decisions support these conclusions. For example, in Reaves v. Vaugh, a fight ensued between a corrections officer and an inmate after the officer searched the inmate's cell and found contraband. 00-CV-2786, 2001 WL 936392 at *1 (E.D. Pa. 2001). The inmate filed a lawsuit against various corrections officers, including the superintendent of the prison. Id. at *4. The court found that the superintendent "did not personally search [plaintiff's] cell, did not use any force against [plaintiff], and did not personally acquiesce in [subordinate officers'] alleged wrongful conduct." Id. When Plaintiff tried to argue that the superintendent could be held liable because he supervised the officers, the court noted that "the mere fact that a named defendant is in a supervisory position is insufficient to establish liability under § 1983, as the doctrines of vicarious liability or respondeat superior do not apply to § 1983 claims." Id. (citing Oliva, 226 F.3d at 201-02).

In contrast is the case Zion v. Nassan, 727 F.Supp.2d 388 (W.D. Pa. 2013). In Zion, two state troopers shot and killed an unarmed person. Id. at 392-93. His estate brought a supervisory liability claim against the troopers' supervisors at the Pennsylvania State Police. Id. The complaint alleged that one of the troopers had a history of violence, and even at one point was held liable for killing a twelve-year old boy. Id. The court found that the estate had pled sufficient facts to show that the supervisors were aware of this history of violence. Id. at 407. Specifically, they alleged "that supervisory defendants received information and reports regarding prior physical altercations involving [the trooper] and misconduct on the part of [the same trooper]." Id.

Here, Plaintiff contends that both Defendants Ott Lovell and Washington were aware of the custom of failing to ignore background clearance requirements and were deliberately indifferent to the need to properly train city officials on screening employees. (Doc. No. 17 ¶ 109, 141, 149.) However, the SAC does not describe with sufficient particularity how both Defendants

were aware. Plaintiff does not offer facts that show Ott Lovell and Washington knew about Daniels' criminal history or his purported attacks on her. She also does not offer facts that they knew that their employees were not complying with background clearance requirements. Additionally, Plaintiff asserts that part of Defendant Ott Lovell's role as Commissioner for the Department is "oversee[ing] 700 full-time employees, and more than 2,700 part-time and seasonal employees," (id. ¶ 57) while Defendant Washington "over[sees] human resources." (Id. ¶ 58.) Similar to Reaves, these facts only suggest that Ott Lovell and Washington supervised employees who, without their personal knowledge, ignored background clearance requirements. Thus, the SAC does not plausibly allege facts to establish supervisory liability under § 1983. Consequently, Defendants' Motions to Dismiss Counts IV and V will be granted as to Ott Lovell and Washington.

## V.     CONCLUSION

For the foregoing reasons, the Motion to Dismiss (Doc. No. 18) filed by Defendants City of Philadelphia, Kathryn Ott Lovell, and Marissa Washington will be granted in part and denied in part. The Motion to Dismiss Count IV will be granted as to all Defendants. The Motion to Dismiss Count V as to the City of Philadelphia will be denied. The Motion to Dismiss Count V as to Defendants Ott Lovell and Washington will be granted. An appropriate Order follows.